FRANK KRUPKE v. JACOB STOCKARD and Others.[1]

February 14, 1908.

Nos. 15,521—(221).

**Drainage of Surface Waters.**

All ponds, sloughs, or lakes which are fed and maintained by surface waters do not necessarily retain their character as such and become subject to drainage, under the doctrine of Sheehan v. Flynn, 59 Minn. 436. Whether such ponds, sloughs, or lakes become permanent bodies of water depends upon the character of the reservoirs, the nature of the outlets, the topography of the country, and the length of time they have resisted the tendency to evaporate.

**Same—Evidence.**

The evidence sustains the finding of the trial court that the ponds in question were of a permanent character and that respondent was entitled to relief by injunction.

Action in the district court for Kandiyohi county against the owners of certain lands and the supervisors of the town of Lake Henry

---

[1] Reported in 115 N. W. 175.

to recover $1,000 damages caused by the overflow of a ditch constructed by defendants, and to restrain defendants from maintaining the ditch. The case was tried before Qvale, J., who found, among other facts, that the ditch in question was 6,775 feet long and had a fall of nineteen feet, that it was two feet at the bottom, three feet at the top, and varied in depth from two feet eight inches to four feet and five feet; that it conveyed large quantities of water from the sloughs mentioned in the opinion upon the land of plaintiff in such destructive volume and with such velocity as to wear away the soil and cut a well-defined channel several feet wide and of considerable depth, and to submerge twenty acres of cultivated land. Judgment was ordered restraining defendants from maintaining the ditch. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*J. D. Sullivan,* for appellants.

*Frank Tolman,* for respondent.

LEWIS, J.

Appellants were the owners of certain tracts of land upon which were located three sloughs or ponds. The upper one contained ninety acres, and in extremely high water overflowed, the water finding its way through a depression to the second or middle slough, which consisted of about sixty acres. The waters of this slough, also, when very high, overflowed, and found their way into a third slough, consisting of about six acres, where in dry seasons the water disappeared. There was no natural outlet or inlet to any of the sloughs. The upper slough at times contained water to a depth of six or eight feet, and once or twice in the period of thirty years was practically dry. The second slough was not so deep, but as a usual thing contained several feet of water, except in dry seasons. There was no natural outlet from the small slough, but in rainy seasons the water overflowed and ran through a natural depression, finding its way into a dry run, or ravine, and finally reached the lands of respondent. For the purpose of draining and improving their lands, appellants constructed a ditch from the upper to the middle, and from the middle to the lower slough, following the course which the water took in periods of overflow. They also dug a ditch from the lower slough in a southerly direction, connecting with the ravine above mentioned.

There was a considerable fall between the upper and lower termini of the ditch. The building of the ditch caused large quantities of water to flow out of the sloughs mentioned, which ran down through the ravine and onto respondent's land, from whence there was no natural outlet.

The trial court granted an injunction permanently restraining appellants from maintaining the ditch. Among other things the court found that large quantities of water were transferred by the ditch upon the lands of respondent, which from the natural topography of the country there was no means of getting rid of; that the three sloughs mentioned were permanent bodies of water, constituting natural receptacles or reservoirs, although they were maintained solely by the accumulation of surface waters arising from rains and melted snow.

The principal question in the case is whether the finding that the waters sought to be drained were not surface waters is sustained by the evidence. We are of opinion that the findings of the court are sustained by the evidence in this particular, and it will be unnecessary to consider the other questions suggested and argued.

The case differs essentially from Gilfillan v. Schmidt, 64 Minn. 29, 66 N. W. 126, 31 L. R. A. 547, 58 Am. St. 515. In that case the pond, or marsh, was treated as surface water, although the court was particular to state that it did not wish to be understood as holding that all lakes or ponds fed by surface waters were of that character. In reference to the pond then under consideration the court used the following language: "This so-called pond, or lake, was merely a large marsh in which large quantities of surface water collected at certain seasons of the year and mostly disappeared at others, but remained long enough to render the lands upon which they rested, and the adjacent low lands, unfit for use." In that case there was a natural outlet and water course running through a series of ponds and lakes into Lake Minnetonka, and the defendant did no more than to deepen the outlet from the pond and straighten portions of the waterway. In the case of Werner v. Popp, 94 Minn. 118, 102 N. W. 366, the twenty five or thirty acres which were drained by the construction of the ditch was conceded to be surface water, which disappeared annually in dry seasons and, except in unusually wet seasons, was sub-

ject to cultivation. In that case the defendant cut a ditch through the rim of a slough, connecting it with a ditch in the highway. The same result might have been obtained by leading the waters of the slough over the lands of the defendants into a natural ravine, where they would have found their way into the same outlet. In the case before us the evidence tends to show that the two larger ponds were permanent bodies of water, and although apparently not fed by springs, having no inlet, yet they were maintained by a considerable watershed. There was never any stream of water connecting them, and only in extremely wet seasons did they overflow, and then the waters followed a slight depression, but even at those times not following any natural channel. It is impossible to adopt any fixed rule to distinguish surface waters from permanent bodies of water, or at what point surface waters leave their fugitive character. Each particular case must be determined on its own facts. The court having found in this instance that the sloughs in question were of a permanent character, it was justified in holding that the waters thereof could not be thrown upon the lands of the lower proprietor. The doctrine of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, has no application.

Affirmed.