GEORGE ERHARD v. MORITZ WAGNER.[1]

May 15, 1908.

Nos. 15,589—(47).

**Marshes—Deepening Natural Outlet.**

The proper method for securing complete drainage for low and marshy lands, where the natural outlet is not sufficient to carry off accumulated surface waters, is to deepen the outlet, provided such method is practicable and reasonable. The doctrine of Sheehan v. Flynn, 59 Minn. 436, should not be extended to apply to a case where wet lands may reasonably be drained by deepening the natural outlet.

**Changing Watershed.**

The mere fact that the outlet is not owned or controlled by the party whose lands are to be drained, and that such party will be benefited more than another will be damaged, does not justify him in cutting a ditch across a watershed, and thus delivering the waters into another watercourse, to the damage of property contiguous thereto.

**Evidence.**

Under the evidence in this case and the facts as found by the court, respondent was not justified in digging and maintaining the ditch in question for the purpose of draining his lands, and delivering the water across a divide into another watercourse, to the damage of respondent.

[1] Reported in 116 N. W. 577.

Action in the district court for Carver county to enjoin defendant from maintaining a certain drainage ditch and to recover $350 damages for injury to plaintiff's land. The case was tried. before Morrison, J., who made findings and ordered that the action be dismissed upon its merits. From an order denying his motion for a new trial, plaintiff appealed. Reversed and new trial granted.

*Thos. F. Craven,* for appellant.

*John J. Fahey* and *Brown, Albert & Guesmer,* for respondent.

LEWIS, J.

Respondent was the owner of the west one half of the northeast quarter and the northeast quarter of the northeast quarter of section 28, township 116 north, of range 25 west. On the northerly portion of this tract of land was a natural marsh, consisting of about seventy acres. Respondent also owned the northwest quarter of the northwest quarter of section 27, which immediately joined his other land upon the east. On the forty located in section 27 there was a natural watershed of considerable width, the easterly side of which sloped toward appellant's land, which consisted of the east one half of the northwest quarter of section 27. This action was brought for the purpose of enjoining respondent from maintaining a sewer ditch running in a northeasterly direction from the marsh, across the dry land, and which discharged a large amount of water into a ravine on respondent's land, and finally reached and damaged appellant's meadow land.

The court found that there was no natural drainage for the waters accumulating in the marsh upon respondent's land, except when the waters became excessively high, at which time the waters flowed in a southerly direction away from appellant's lands.

The court also found "that plaintiff's lands aforesaid are separated from the defendant's said marsh and slough lands, and the other lands to the west and northwest thereof, by a natural watershed and wide expanse of high, hard land, which naturally forms, and has at all times naturally formed, a barrier and protection to plaintiff's said lands aforesaid from the waters which naturally accumulate in said marsh, slough, and low lands of the defendant aforesaid; that said watershed and wide expanse of hard land aforesaid is located in the westerly half of the northwest quarter of said section 27, and is own-

ed and occupied by said defendant; that the easterly side of said watershed forms a side hill, and slopes rapidly down to the westerly line of this plaintiff's said lands, and the westerly side of said watershed slopes off to the marsh and slough lands so owned by said defendant; and that said watershed and wide expanse of high, hard land as aforesaid extends in width about eighty rods and in length from the northern boundary line of said section 27 to the southerly boundary line thereof."

The court also found that respondent constructed a ditch about eight hundred feet long across the dry land east of the marsh to a point on respondent's land about forty five rods from his easterly line; that this ditch was eleven and one half feet deep through the watershed, and by reason thereof respondent drained seventy acres of his slough lands through such net work of ditches and drain. through such watershed to the hill slope at the point indicated, where the water ran down the hill upon the meadow land of appellant, causing damage to the extent of $75 in the years of 1904, 1905, and 1906. "That at the easterly end of said ditch, and on the side of said side hill or slope, there is a ravine in which said network of ditches and drain deposits the waters from said defendant's land and other lands adjacent thereto, through which ravine said water, when so deposited, runs down upon the said meadow lands of the plaintiff; that said ravine is the only accessible natural drain into which defendant could deposit said waters so accumulated upon his said lands; that said system of drainage so made and constructed by the defendant is the only practicable and feasible means by which his said lands can be drained with the least injury to his neighbor; and that while the plaintiff, during excessive rains and wet seasons, may suffer some damage by reason of said system of drainage so depositing water in said ravine that it flows upon his said meadow lands, the amount of benefits to the lands of defendant and other lands adjacent thereto far exceed the amount of injury sustained by the plaintiff, and the said plaintiff is not unreasonably and unnecessarily injured thereby."

The petition was dismissed upon its merits, and it is necessary to consider whether the order of dismissal was justified by the evidence and the findings of fact. Reading the second and third findings together, in connection with the evidence bearing upon the subject, it

is evident that the court found there was no natural outlet for the waters accumulating in the marsh to the east through the so-called tilled land or watershed; that all of the water accumulating in the marsh at high-water periods overflowed through a natural drainage channel to the south. According to the evidence the waters reached a creek of considerable size, about one mile south from the marsh. It also appears from the evidence that the southeasterly portion of the marsh was located upon the southeast quarter of the northeast quarter, over which such natural watercourse extended, and that the land belonged to other parties than respondent. It appears that the marsh is shallow, and that the waters have annually disappeared by absorption and evaporation, except during excessively rainy seasons, and that, in order to thoroughly drain the marsh to the south along the natural watercourse, a ditch somewhat less than two feet deep would be required.

The question before the trial court was whether, under the doctrine of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, respondent was justified in constructing and maintaining the ditch. In deciding that the method adopted by respondent was the most practicable and reasonable way of draining his marsh, the court must have been influenced by the fact that other persons owned the land to the south, and that the expense of securing the right of way and deepening that channel would make the improvement too burdensome to be practicable. In Sheehan v. Flynn the court upheld the defendant in connecting by a ditch a depression located upon part of his land with another depression and natural watercourse, also located on his land. There was no natural outlet, even for high water, and there was no other practical way in which the depression could be drained. In the spring of the year surface waters gathered to a depth of two or three feet, but always disappeared in the summer. It was not intended to hold in that case that any person, in improving or draining his own land, might discharge the surface waters thereof upon the lands of another simply because the damage which might be occasioned would be less than the benefits to the party making the improvement. The question of comparative damages and benefits is an item to be considered in connection with the circumstances of each particular case, but the private proprietary rights of one individual should not be subject to the personal interests of another, as remark-

ed by Justice Buck in Gilfillan v. Schmidt, 64 Minn. 29, 66 N. W. 126, 31 L. R. A. 547, 58 Am. St. 515, except in extreme cases. The rule as applied in Sheehan v. Flynn has never been extended.

In Gilfillan v. Schmidt the improvement under consideration consisted merely in deepening and straightening the natural watercourses. In Werner v. Popp, 94 Minn. 118, 102 N. W. 366, the opinion referred to the case of Brown v. Winona & S. W. Ry. Co., 53 Minn. 259, 55 N. W. 123, 39 Am. St. 603, and apparently approved of the doctrine of incidental injury; but the facts to which the rule was applied were that the defendant did no more than to connect by a short ditch waters which might otherwise have been connected with the same outlet by a little different method. See Nye v. Kahlow, 98 Minn. 81, 107 N. W. 733.

It is true that appellant might relieve his lands of the burden thus cast upon them by initiating a drainage proposition, public or private, which would carry away the surplus waters through a natural waterway to the south of his land; but, according to the evidence and findings, a similar course was open to respondent. The mere fact that respondent did not own the land through which the general watercourse found an outlet did not alone justify him in placing upon appellant the burden of providing an ample outlet. In solving these drainage propositions, the natural lay of the land must be taken into consideration. Nature has provided certain natural watersheds and waterways, and lands are bought and improvements made with reference to them. Within reasonable limits landowners are required to anticipate that natural creeks, coulees, and waterways may be deepened or straightened, in the course of time for the purpose of making permanent ditches for the accommodation of all lands located within that particular basin; but it would be unreasonable to require them to anticipate that any one may change the face of nature and turn waters out of their natural courses across a divide into an entirely different course. We are of opinion that the trial court was wrong in concluding that the system adopted was the most reasonable and practicable. The drainage acts are intended to meet such conditions as this; but the burden of initiating such improvement cannot be shifted by one to another, when such a course is reasonably open to himself.

Reversed, and new trial granted.