## GRACE E. PELL AND OTHERS v. ROBERT NELSON, JR.

201 N. W. 2d 136.

September 15, 1972—No. 43311.

*Muir, Lundblad, Meyer & Storey* and *Maylon G. Muir,* for appellants.

*Tuveson & Goldman* and *Robert C. Tuveson,* for respondent.

Heard before Knutson, C. J., and Otis, Kelly, and Todd, JJ.

OTIS, JUSTICE.

The issue raised on this appeal is whether the mechanical means employed by plaintiffs for gathering and disposing of surface water and releasing it so that it flows across defendant's adjoining property is an unreasonable use of plaintiffs' land. The trial court held that it was and we affirm.

The plaintiffs Pell own 360 acres of farmland in Freeborn County, of which a so-called "Kral 40" was purchased in 1967. Defendant, Robert Nelson, in 1962 acquired 77½ acres immediately to the east and below the Pell property. Prior to the construction of the drainage system which precipitated this action, surface water from the Pell property found its way across Nelson's land through a natural draw or swale. Nelson had previously collaborated in constructing a ditch across his land from the Pell line to facilitate the runoff of surface water through a culvert under an adjoining roadway.

In the summer of 1967, the Pells undertook an extensive drainage project to accommodate a watershed of 180 acres. They laid 39,020 feet of tile throughout a 160-acre area, running the tile into a 3,500-gallon sump drained by an automatic electric pump. The pump was made necessary by the topography which impeded drainage to the east from the sump. The pump was activated at least four times an hour and discharged 1,200 gallons a minute through a 12-inch outlet located 65 to 70 feet west of Nelson's property. A dike was built by the Pells to prevent the discharged water from returning to the sump.

The Pells invested some $18,000 in the drainage system. In addition to facilitating the flow of natural surface water, the

system drained about 10 acres of land where previously there had been 7 or 8 untillable sloughs.

To prevent the water which the Pells discharged through the 12-inch pipe from inundating his land, Nelson built a dike of his own. As a result, the sump pump simply recycled discharged water without disposing of it. It was the construction of this dike which prompted the Pells to bring an action for damages and to enjoin Nelson from interfering with what they claimed to be the natural flow of water from their property to Nelson's. Nelson counterclaimed, seeking damages and an injunction to prevent the Pells from diverting and otherwise accelerating the natural flow of water over his property.

The trial court held that the Pells' drainage system was an unreasonable use of their land which prevented Nelson from using his premises in a normal fashion. The court concluded that plaintiffs were guilty of a trespass. It enjoined the operation of the sump pump and the maintenance of the Pell dike but denied damages to either party. It also held that the dike constructed by defendant constituted an unreasonable diversion of surface water and ordered defendant's dike removed.

In a memorandum accompanying its order denying a new trial, the court extensively dealt with the law and the facts. In it the court stressed the fact that plaintiffs were forcing water across the Nelson land without permitting the surface water to take its natural course.[1] It pointed out that the Pells determined the rate and concentration of the flow to suit their convenience. The court found that after the system was installed, water from the Pell land inundated 38 acres of Nelson's pasture and an area of cropland devoted to corn and beans. The court did not, however, require the removal of any tile. It directed only that the artificial accumulation of water and its discharge a short distance from defendant's land by means of an electric pump be discontinued, letting the sump overflow by natural processes.

---

[1] The pump actually exerted no pressure beyond lifting the water into the 12-inch outlet pipe.

Much has been written by this court on the subject of the right to dispose of surface water. Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462 (1894) ; Krupke v. Stockard, 103 Minn. 349, 115 N. W. 175 (1908) ; Erhard v. Wagner, 104 Minn. 258, 116 N. W. 577 (1908); Enderson v. Kelehan, 226 Minn. 163, 32 N. W. 2d 286 (1948); Collins v. Wickland, 251 Minn. 419, 88 N. W. 2d 83 (1958); Kallevig v. Holmgren, 293 Minn. 193, 197 N. W. 2d 714 (1972). We do not propose to review our decisions again, except to note that the balancing of plaintiff's benefits against defendant's injury is not the sole test.

"* * * It was not intended to hold in that case [Sheehan v. Flynn] that any person, in improving or draining his own land, might discharge the surface waters thereof upon the lands of another simply because the damage which might be occasioned would be less than the benefits to the party making the improvement. The question of comparative damages and benefits is an item to be considered in connection with the circumstances of each particular case, but the private proprietary rights of one individual should not be subject to the personal interests of another * * *." Erhard v. Wagner, 104 Minn. 258, 261, 116 N. W. 577, 579.

The trial court viewed the two properties and concluded that although the "Kral 40," which was previously saturated to about a foot below the surface, was greatly improved by the drainage system, the countervailing damage to defendant was substantial.

As we said in Enderson, the reasonable-use rule is not susceptible of a cut-and-dried formula but must remain flexible. What is a reasonable use is a fact question to be resolved in each case.

"* * * [T]he trial court's findings thereon will not be disturbed upon appeal unless they are manifestly and palpably contrary to the evidence as a whole." 226 Minn. 169, 32 N. W. 2d 289.

Here, the evidence amply sustains the court's findings.

We subscribe to the views expressed in the concurring opinion

of Mr. Justice Mitchell in the Sheehan case. There he summarized his understanding of the applicable law: The owner of land may not collect surface water and divert it from its natural channel to discharge it where it would not otherwise have gone. But an owner may drain his land by ditching or tiling although the effect, as here, may be to accelerate the movement and to increase the volume of water which reaches his neighbor's land.[2] However, Mr. Justice Mitchell was troubled by the same problem we face when he stated (59 Minn. 450, 61 N. W. 466):

"* * * The only thing that, to my mind, casts the least possible doubt upon the legality or reasonableness of defendant's acts, is the fact, found by the court, that without this ditch the water which will accumulate in the depression on defendant's land would not flow upon plaintiff's land, but would remain on that of defendant until it is absorbed by the soil or evaporates."

In Krupke, we discussed the distinction between sloughs which were permanent bodies of water and those which were the product of surface waters of a fugitive character. Somewhat the same problem is presented here by the draining of the Pells' sloughs. Unquestionably, the sloughs permitted evaporation and percolation which substantially diminished the flow of surface water to Nelson's property. Without them, it can be expected that the volume of water which will flow naturally from the Pells' land

---

[2] Mr. Justice Matson, in Collins v. Wickland, 251 Minn. 419, 425, 88 N. W. 2d 83, 88 (1958), quoted with approval a succinct statement of the law found in Kinyon & McClure, *Interferences With Surface Waters,* 24 Minn. L. Rev. 891, 904, thus: "* * * Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable. The issue of reasonableness or unreasonableness is a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused, the foreseeability of the harm on the part of the posssesor making the alteration in the flow, the purpose or motive with which he acted, and others."

will increase. Nevertheless, this is a consequence which Nelson must bear since the trial court determined, and we agree, that the tiling of the Pells' land was a reasonable means of drainage. Nelson himself acknowledges this right but objects to the use of a mechanical system which will accelerate the volume and funnel the water he must accept to a particular point selected by plaintiffs.

The effect of the trial court's decision is to allow plaintiffs' property to be drained by gravity without a concentrated flow mechanically contrived. This result conforms to the rules which we have adopted, reflecting, as we have said, neither the common law nor the civil law but a rule of reasonable use having a distinct and independent status. Enderson v. Kelehan, 226 Minn. 163, 167, 32 N. W. 2d 286, 289 (1948). Accordingly, we affirm.

Affirmed.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.