Edmund DUEVEL, Appellant,

v.

Eugene JENNISSEN and Claudette Jennissen, Respondents.

No. C6–84–271.

Court of Appeals of Minnesota.

July 31, 1984.

B.W. Christopherson, Nelson, Oyen, Torvik, Minge, Christopherson & Gilbertson, Clarkfield, for appellant.

Gerald W. Von Korff, Rinke, Noonan, Grote & Smoley, St. Cloud, for respondents.

Considered and decided by FOLEY, P.J., and SEDGWICK and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Duevel and Jennissens are adjoining landowners. Duevel brought an action to recover damages and to enjoin Jennissens from pumping water onto his land. Jennissens counterclaimed for damages caused by Duevel's obstructing a drainage ditch connecting the parties' lands. The trial court dismissed Duevel's suit, ordered him to reopen and keep open the ditch, and awarded Jennissens damages for flooding caused by Duevel's obstruction of the ditch. On appeal Duevel contends that the trial court's findings of fact are clearly erroneous. We affirm.

## FACTS

Appellant Edmund Duevel owns a farm in Stearns County. The property is bounded on the north by wildlife area maintained by the Department of Natural Resources (DNR), and on the south by a farm owned by respondents Eugene and Claudette Jennissen.

The natural flow of water in the area is northerly across the Jennissen and Duevel farms to the DNR land. A ditch runs from the southern culvert on the Jennissens' property to a low spot close to two culverts on the northern edge of the Duevel farm. The culverts carry the water onto the DNR land.

In 1978, two years before Duevel bought his farm, Jennissens installed a pump and tiling system to improve drainage on their property. The system was designed to handle water from their farm and from adjoining farms to the south and west. A 14 inch diameter tile pipe channeled subsurface water to the northern border of the Jennissen farm. There it was pumped into the ditch which crosses the Duevel property.

When Duevel bought the property in 1980 he was aware of Jennissens' drainage system. The system operated without complaint from 1979 through 1981. The water flowing across the Duevel property stayed in the ditch. It caused no damage to the property.

In 1981 Duevel spent approximately $55,000 to install a similar system on his property. Duevel's drainage contractor recommended hooking into and extending Jennissens' system using a 16 inch main. When the parties could not agree on a unified system, Duevel installed an independent system with a 12 inch main. Duevel's system included a dike and inlet on the southern border of his farm adjacent to the Jennissen pump. An eight inch intake was placed at the bottom of the inlet to accept water from the pump. It would have cost an additional $2,000 to install a 16 inch main.

The contractor advised Duevel to leave the ditch open because he could not guarantee the system could handle all of the water from Jennissens' pump. Duevel ordered the ditch closed.

In March 1982 Duevel's pump broke. Water, unable to escape through the ditch or through Duevel's tile system, began collecting on Jennissens' land. Forty to fifty acres were flooded. Jennissens began pumping in May. The dike separating the parties' properties broke and Duevel's property was flooded also.

## ISSUE

Are the trial court's findings of fact unsupported by the evidence and therefore clearly erroneous?

## ANALYSIS

Minnesota follows the "rule of reasonable use" with regard to diversion or obstruction of surface water.

[T]he rule is that in effecting a reasonable use for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would otherwise have never gone that way * * * if

(a) There is a reasonable necessity for such drainage;

(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden;

(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted.

*Enderson v. Kelehan,* 226 Minn. 163, 167–68, 32 N.W.2d 286, 289 (1948) (quoted approvingly by *Miles v. City of Oakdale,* 323 N.W.2d 51, 55 (Minn.1982)).

█ The reasonable use rule cannot be reduced to a cut-and-dried formula. What is a reasonable use is a fact question to be resolved according to the peculiar facts of each case. *Pell v. Nelson,* 294 Minn. 363, 366, 201 N.W.2d 136, 138 (1972); *Enderson,* 226 Minn. at 169, 32 N.W.2d at 289. The trial court's findings on reasonable use will not be disturbed upon appeal unless they are clearly erroneous. *Miles,* 323 N.W.2d at 54.

The trial court found that Jennissens' drainage system increased their tillable land by more than 50 acres while causing no harm to Duevel's land. The system did not substantially increase the water flowing through the ditch connecting the parties' property. By contrast, the court found that Duevel's obstruction of the drainage ditch prevented the natural flow of water and caused flooding of Jennissens' land. Jennissens' suffered crop damage as a result.

Duevel challenges the court's finding that Jennissens' system did not substantially increase the natural flow through the ditch or damage his land. He also challenges the finding that his obstruction of the ditch caused crop losses by Jennissens. There is sufficient evidence in the record to support the challenged findings.

█ The ditch that connected the parties' land carried a tremendous amount of water before the installation of Jennissens' drainage system. The ditch had adequate capacity to handle the additional flow. According to the tenant who farmed the Duevel property through the 1980 season, Jennissens' pumping caused no appreciable change in the amount of water carried by the ditch. From this the court could conclude that any increase in the natural flow caused by Jennissens' system was inconsequential.

█ The court's finding that the additional water caused no damage to Duevel's property is supported by the fact that the system operated from 1979 through 1981 without complaint from Duevel or the tenant who preceded him. The tenant, a neighbor, and a drainage contractor Duevel consulted, all testified that they saw no evidence of damage to the Duevel land from the Jennissen drainage system.

█ The flooding that both Jennissens and Duevel suffered occurred only after Duevel filled in the drainage ditch and diked around Jennissens' pump, leaving only an eight inch intake to accept all of the water discharged by a 14 inch tile pipe. The breakdown of Duevel's pump aggrava-

ted the problem. In such circumstances it was not clearly erroneous for the trial court to find that flood damage to both properties resulted not from Jennissens' drainage system, but from Duevel's attempt to force the large volume of water that previously flowed through the ditch through an inadequate tile main.

### DECISION

We affirm the decision of the trial court. Jennissens' drainage system is permissible under the reasonable use rule. It makes additional land available for tillage without harming neighboring property. Duevel's obstruction of the drainage ditch connecting the parties' properties is not similarly permissible. Duevel chose to install an inadequate drainage system. He cannot correct his error by obstructing drainage from Jennissens' farm.