Raymond EVERS, et al., Appellants,

v.

Arnold WILLABY, Respondent,

John Ruenitz, et al., Defendants.

No. C7–88–2393.

Court of Appeals of Minnesota.

Aug. 29, 1989.

LaMar Piper, Piper Law Firm, St. James, for appellants.

L. Douglas Storey, Storey & Storey, Mountain Lake, for respondent.

Heard, considered and decided by WOZNIAK, C.J., and CRIPPEN and SHORT, JJ.

## OPINION

SHORT, Judge.

Appellants Raymond Evers, Norbert Evers and Ogden Rood brought this action to recover damages and to enjoin respondent Arnold Willaby from pumping water through appellants' drainage system. By special verdict the jury found that appellants' drainage system provided adequate drainage for appellants' lands even with the addition of Willaby's water and that the water from Willaby's lands did not cause any damage to appellants' crops in 1984. Appellants claim the trial court erred by (1) instructing the jury that Willaby may attach his drainage system to appellants' system, and (2) admitting testimony regarding appellants' purported acquiescence in Willaby's actions. We affirm.

## FACTS

In the spring of 1968, Henry Evers and his two sons, Raymond and Norbert, joined together with Helen Ruenitz and Walter Rood, owners of neighboring farms, to construct and install a field drainage system for the benefit of the three farms. The system would cross the Ruenitz property and would also act as an outlet for the tiling that Henry Evers wanted to do on his own property. Ruenitz owned land north and downstream of the Evers' 200 acres. Her parcel consisted of 117.5 acres. Rood's land was west of the Ruenitz and Evers land, and Rood's drainage need was for a minor outlet to drain only about 35

acres. The locations of the adjoining landowners and the placement of the drainage system is depicted in the following unscaled diagram.

```
Ogden          ||
Rood           ||    Ruenitz
(35 Acres)     ||    (117 Acres)
               ||
    === ==|    |.=======| Elmer
               ||  ------
               ||    Evers          o
               ||    (9 Acres)       )
               ||    Henry Evers &  ||
               ||    Sons           ||   Willaby
               ||    (200 Acres)    ||   (205 Acres)
               ||                   ||
               ||                   ||
               ||                   ||
               ||                   ||
               ||                   ||
               ||                   ||
               ||                   ||
               ||                   ||
```

```
                              N
                          W-|-E
                              S
```

```
===  -  12 inch tile
---  -  10 inch tile
o    -  hookup
```

For approximately 18 years Elmer Evers rented the Ruenitz farm. During that time he and his family lived on the nine acre tract in the extreme southeast quarter of the Ruenitz land. In 1979 Elmer Evers paid up his contract for deed with Ruenitz for the tract of land on which he had been living. The deed contained no reference to drainage nor was there any agreement as to drainage. In 1980, Elmer Evers connected his house water drainage system to the west branch to drain his wastewater into the main tile.

In 1978, Arnold Willaby bought the southwest quarter of section 25 which adjoined the Henry Evers farm to the east. In 1983, Willaby contacted John Ruenitz, Mrs. Ruenitz's husband, to inquire about obtaining an outlet for this property. Ruenitz told Willaby that he did not want to add more drainage to the Ruenitz–Evers–Rood drainage system. Willaby did not contact either Raymond or Herbert Evers to obtain their consent to add his drainage to the three-farm system. Instead, Willaby contacted Elmer Evers, the owner of a nine-acre building site on the southeast corner of the Ruenitz farm to get an outlet

for his section 25 property. Willaby paid Elmer Evers $500.00 for a right to connect to the 10–inch main that ran across the Ruenitz farm and extended across the southern edge of the building site that Ruenitz had previously sold to Elmer Evers. That 10–inch main connected into the 12–inch three-farm drainage system. Willaby's use of the system through this hookup added 205 more acres of drainage to the Ruenitz–Evers–Rood drainage system. Prior to making this arrangement with Elmer Evers, the Willaby water and the water south of Willaby drained north into the road ditch on County Road 9.

Willaby testified that prior to the date he actually tapped into the Ruenitz–Evers–Rood system, he informed Raymond Evers of his agreement with Elmer Evers. Willaby further testified that Raymond Evers responded that he could not stop Willaby from doing business with Elmer Evers. At trial, appellants argued that they suffered substantial crop damage in 1984 as a result of poor drainage through the system. The jury found otherwise and returned a verdict for Willaby.

## ISSUES

I. Did the trial court err in instructing the jury that respondent Willaby was entitled to attach his farm drainage system directly to the Ruenitz–Evers–Rood system?

II. Did the trial court commit reversible error in admitting evidence as to appellants' purported oral acquiescence in respondent Willaby's actions?

## ANALYSIS

Appellants challenge several of the trial court's conclusions of law through the court's instructions to the jury. This court is not bound by the trial court's conclusions of law. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977). Conclusions of law can be overturned upon a showing that the trial court has erroneously construed and applied the law to the facts of the case. *Feil v. Commissioner of Public Safety*, 383 N.W.2d 420, 423 (Minn. Ct.App.1986).

### I.

Appellants argue that the trial court erred by instructing the jury that respondent Willaby was entitled to attach his farm drainage system directly to appellants' system without appellants' permission. Appellants contend that: (a) Minnesota's rule of reasonable use prohibits respondent from utilizing appellants' artificial drainage system; (b) Elmer Evers did not have a right to sell Willaby a tap into appellants' drainage system; (c) the trial court's instruction that Willaby had a right to purchase a tap into appellants' system essentially directed a verdict in favor of respondent; and (d) the trial court's instruction is against public policy.

### A. Use of system

With regard to diversion or obstruction of surface water, Minnesota follows the "rule of reasonable use." *See Quist v. Kroening*, 410 N.W.2d 5, 6–7 (Minn.Ct.App. 1987).

[T]he rule is that in effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would otherwise have never gone that way * * *

(a) [If there] is a reasonable necessity for such drainage;

(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted.

*Enderson v. Kelehan*, 226 Minn. 163, 167–68, 32 N.W.2d 286, 289 (1948). The trial court's findings on reasonable use will not be disturbed on appeal unless they are clearly erroneous. *Miles v. City of Oakdale*, 323 N.W.2d 51, 54 (Minn.1982).

The trial court found that Willaby's lands are naturally drained to the north and west eventually flowing across the Elmer Evers and Ruenitz lands. Based on the reasonable use rule, Willaby has a right to drain his water by natural drainage onto the Elmer Evers and the Ruenitz property. *See e.g., Kallevig v. Holmgren*, 293 Minn. 193, 197–98, 197 N.W.2d 714, 718 (Minn. 1972); *Johnson v. Agerbeck*, 247 Minn. 432, 437–38, 77 N.W.2d 539, 543 (1956); *Enderson*, 226 Minn. at 167–68, 32 N.W.2d at 289; *Duevel v. Jennissen*, 352 N.W.2d 93, 96 (Minn.Ct.App.1984). Willaby also has the right to drain the water on his land by tiling his land and allowing the water to dump onto the adjoining landowner's land as long as his interference with the flow of surface water is not unreasonable. *Pell v.*

*Nelson,* 294 Minn. 363, 367, 201 N.W.2d 136, 139 (1972).

From the rule it follows that if the jury found that Willaby reasonably drained his land into appellants' drainage system, then Willaby has a right to do so. There was no evidence presented that Willaby's use of the drainage system was unreasonable. Evidence that would have further aided both the trial court and the jury as to the question of reasonableness of Willaby's hookup and drainage of his lands might have included surveys, blueprints of the drains, diagrams of the elevations of the tile system, future plans of the original building of the system, data as to the capacity of the system after the hookup, and data as to the capacity of the system as originally constructed. Without any such data, the trial court properly instructed the jury on the only question of reasonableness upon which there were sufficient facts to answer. Because the jury found that there was no injury to appellants' crops, Willaby's use of appellants' drainage system for drainage of his land was reasonable.

### B. Right to sell

Appellants also argue that Elmer Evers interfered with appellants' easement by selling the right to tap into the Ruenitz–Evers–Rood drainage system. Because appellants have not brought an action against Evers for interference with an easement, we will not address any easement or contract claims appellants may have against Evers.

### C. Instruction

Appellants argue that the trial court effectively directed a verdict in favor of respondent by stating that Willaby had a right to purchase an outlet on Elmer Evers' property. We disagree. Based on the evidence at trial, it is clear that because the hook up to the drainage system was on Elmer Evers' land, Elmer Evers had a right to sell Willaby the right to hook up. Pursuant to the tile agreement between Elmer Evers and Willaby, this purchase merely entitled Willaby to travel onto Elmer Ever's land to hook up his system. The agreement had nothing to do with whether Willaby had the right to use the system, which under Minnesota law depended on whether his use of the system was reasonable. Because the trial court's instruction did not interfere with the jury's evaluation of the evidence on the question of reasonableness, the instruction was not erroneous.

### D. Public policy

Appellants finally argue that this instruction is against public policy because it will discourage cooperation among landowners in developing mutually beneficial drainage systems. Minnesota's rule of reasonable use seems to permit other landowners to subsequently attach to existing drainage systems as long as the use is reasonable. That fact alone should answer appellants' policy argument. We have suggested some of the elements of reasonableness that the jury might consider in evaluating whether an upstream landowner's use is reasonable. By affirming the trial court in this matter, we in no way condone Willaby's actions. If other landowners want to prevent interlopers like Willaby, they should consider express limitations on the right to sell hookups. Restatement of Property § 487 (1944 & Supp.1989). Further, we make no determination as to Willaby's responsibilities to assist in the maintenance of the drainage system.

## II.

Appellants also argue that the trial court erred in admitting testimony regarding appellant Evers' alleged acquiescence to Willaby's actions. Even if that evidence was inadmissible, a new trial is not warranted because the testimony is only collateral and not material to the main issue. *See* Minn.R.Evid. 103; Minn.R.Civ.P. 61; *Molkenbur v. Hart,* 411 N.W.2d 249, 253 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Oct. 30, 1987). The special interrogatories given to the jury spoke only to the issue of possible damage to appellants' crops. Thus, any alleged acquiescence by Raymond Evers is immaterial to the jury's verdict.

## DECISION

The trial court properly instructed the jury regarding Willaby's right to use appellants' drainage system, and did not commit reversible error in admitting evidence that appellant Raymond Evers may have acquiesced to Willaby's actions.

Affirmed.