## LOUIS SACHS v. HARVEY CHIAT AND ANOTHER.

162 N. W. (2d) 243.

October 25, 1968—No. 40,817.

*Sachs, Latz & Kirshbaum,* for appellant.

*Robins, Davis & Lyons* and *John Chapman,* for respondent Chiat.

*Cragg, Bailly & Herzog,* for respondent construction company.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

Defendant McNulty Construction Company constructed a home for defendant Harvey Chiat at 3812 Drew Avenue South, Minneapolis, adjacent to the home of plaintiff, Louis Sachs, at 3816 Drew Avenue South. Plaintiff sued these defendants for damages to his property alleged to have resulted from the concussion and vibrations of pile-driving operations employed in constructing the foundation for the Chiat home and from the drainage of surface water onto plaintiff's lot because of the elevated grade established for the Chiat lot; plaintiff additionally applied for an injunction requiring defendants to take measures which would prevent the continuance of such water drainage.[1]

The issues concerning the drainage of surface waters were submitted to the jury, except that the determination of whether an injunction should be granted was reserved to the court. The jury returned a verdict for de-

---

[1] Each of these defendants made cross-claims against each other and third-party complaints against defendant L. H. Bolduc Company, Inc., which performed the pile-driving operations, and defendant Talberg Bros. Landscaping Company, which performed the grading work (and which in turn made third-party complaint against its own insurer, Mutual Service Casualty Insurance Company). The trial court ordered the original action tried separately, and only those issues are before us on appeal.

fendants, and the trial court denied plaintiff an injunction. The issue of liability for damages caused by defendants' pile-driving operation was decided by a directed verdict for defendants. Plaintiff appeals from the order denying his post-trial blended motion for judgment n. o. v. or for a new trial and from the order denying his application for injunction.

■ The principal issue presented is whether one who authorizes or engages in pile driving may be liable to an adjoining landowner for property damage resulting from the concussion or vibrations from such operations even though the pile-driving operations were conducted in the customary and workmanlike manner and without negligence. The question, at least in this specific context, is one of first impression in this state.[2] Although similar questions have been raised in other jurisdictions, the legal principles applied and the results reached have varied. We do not undertake to frame a general rule for application to all situations in which concussion and vibration damage may result from the use of the widely varied mechanical instruments common in our industrialized society.

The homesites of plaintiff and defendant Chiat, like others in their immediate residential area, are situated in a peat bog. Because of these peculiar soil conditions, houses could not be erected on these lots without special foundation support. Plaintiff himself found it necessary to undergird the foundations of both his house and detached garage with driven piles when he constructed them in 1958; and other lot owners in the same block likewise used foundation pilings. It is undoubted, therefore, that it was necessary for defendant Chiat similarly to support the foundation for his house in 1962. The record is silent concerning the availability of an alternative method for supporting a residential structure.

---

[2] We note without extended discussion the general relevance of the historic principles established in Rylands v. Fletcher, L. R. 1 Ex. 265, affirmed, L. R. 3 H. L. 330, and applied in our own decisions: Cahill v. Eastman, 18 Minn. 292 (324); Berger v. Minneapolis Gaslight Co. 60 Minn. 296, 62 N. W. 336; Wiltse v. City of Red Wing, 99 Minn. 255, 109 N. W. 114; Bridgeman-Russell Co. v. City of Duluth, 158 Minn. 509, 197 N. W. 971. The subsequent development of this doctrine has been extensively considered in Prosser, *Nuisance Without Fault*, 20 Tex. L. Rev. 399, and Prosser, Torts (3 ed.) c. 14. See, also, Restatement, Torts, §§ 519, 520; Keeton, *Trespass, Nuisance and Strict Liability*, 59 Col. L. Rev. 457; Harper, Torts, § 203.

The competing interests of the parties are obvious: Plaintiff, who has built his home in the peat bog, wishes to be protected from damage to his property and wants to be compensated if such damage occurs; defendant Chiat wishes to build his home in the same locale and does not want imposed upon him any greater burden than had confronted his neighbor. The accommodation of these competing social interests involves, at the same time, a regard for the interests of the community in the maximum utilization of limited urban land.

Defendants, it must be acknowledged, were not engaged in blameworthy and wrongful activity, but were making a natural and not unreasonable use of land. The trial court, in directing a verdict for defendants, doubtless based its decision upon that premise, for it reasoned that defendants had employed the necessary and usual means to adapt the Chiat lot to its lawful and appropriate use and that plaintiff, as the first occupant of a lot in this tract, should not be able to control Chiat's use of his adjoining property by imposing a penalty for using it in precisely the same manner as plaintiff had. This rationale is supported by such cases as Booth v. Rome, W. & O. T. R. Co. 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105; Trull v. Carolina-Virginia Well Co. 264 N. C. 687, 142 S. E. (2d) 622; and Ted's Master Service, Inc. v. Farina Brothers Co. Inc. 343 Mass. 307, 178 N. E. (2d) 268. We are not persuaded, however, that this view achieves the soundest adjustment of these competing social interests. It occurs to us that there may well be no person who would be willing to be first to utilize a tract of urban land if the price of priority were exposure to unrecoverable damage at the hands of whoever chooses to be second. The most that should follow from that premise is that the subsequent property owner should not be liable in damages to the established property owner unless it can be clearly proved that the damages are substantial and result actually and solely from the concussion and vibration of the pile-driving operations.

Pile driving, as the directed verdict in this case assumes, did transmit concussion and vibration to the immediately adjacent land and caused substantial property damage.[3] To the extent that it might be assumed that

---

[3] The nature and extent of the damage attributable to the acts of defendants has, of course, not been determined. Plaintiff undertook to prove crack-

pile driving would inevitably transmit concussion and vibration to adjacent areas and result in serious harm to adjacent landowners, regardless of the reasonable precaution with which it is conducted, we think it may be classed as an inherently dangerous or ultrahazardous activity. Even though it is not conduct which is so hazardous or lacking in social utility that it should be prohibited, we conclude that it is the kind of activity that should not be permitted without liability for substantial damage to property actually resulting from its performance. As the New Jersey Supreme Court said in Berg v. Reaction Motors Div. 37 N. J. 396, 405, 181 A. (2d) 487, 492, a case in which property damage was caused to homeowners as a result of the testing of a rocket engine for a supersonic airplane:

"* * * We are here primarily concerned with the underlying considerations of reasonableness, fairness and morality rather than with the formulary labels to be attached to the plaintiffs' causes of action or the legalistic classifications in which they are to be placed. * * *

"* * * It may be assumed, for present purposes, that the defendant's activities were conducted with great care and had great public utility and that a court would hesitate to enjoin them notwithstanding the resulting structural damage to the neighboring property. But the issue before us is not whether there should be an injunction but whether the defendant may reasonably be expected to make monetary payment. On that issue there would appear to be little room for difference of opinion—every consideration of fairness and justness dictates that the defendant at least make its neighbors whole for the structural damage it caused."

See, also, Selle v. Kleamenakis (La. App.) 142 So. (2d) 50, where the issue was decided on the basis of statutory policy, and Caporale v. C. W. Blakeslee & Sons, Inc. 149 Conn. 79, 175 A. (2d) 561.

---

ing of the exterior brick and interior plaster and mouldings of his house and cracking of the concrete floor of his garage. Although some of these cracks had appeared prior to the construction of the Chiat house, there is evidence from which a jury might find that either new cracks appeared or old cracks were enlarged. Proof of causation was mainly that their occurrence was coincidental with the construction of the Chiat house.

We conclude, therefore, that the court erred in directing a verdict for defendants. We accordingly reverse and remand for a determination of whether substantial damages were actually caused to plaintiff's property and solely as a direct result of defendants' pile-driving operations.

 The issues presented by plaintiff's action for property damage resulting from the drainage of surface water from defendant Chiat's land onto his are governed by the well-settled rule of reasonable use. As this court stated in Collins v. Wickland, 251 Minn. 419, 425, 88 N. W. (2d) 83, 87:

"* * * Since Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, Minnesota has adhered to the reasonable-use rule. Under this rule—

" '* * * Each possessor [of land] is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable. The issue of reasonableness or unreasonableness is a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused, the foreseeability of the harm on the part of the possessor making the alteration in the flow, the purpose or motive with which he acted, and others.' Kinyon & McClure, *Interferences with Surface Waters*, 24 Minn. L. Rev. 891, 904.

\* \* \* \* \*

"Any determination of whether a possessor has made a reasonable use of his land requires a consideration of the normal use and development of land in the immediate area or locality. * * * Common experience and knowledge have demonstrated that in order to prepare urban property for its customary use and enjoyment, it is frequently necessary to level, raise, lower, or otherwise alter the ground surface."

This settled principle is fully applicable to the situation in this case. The general trend of the lots in the 3800 block of Drew Avenue South, where plaintiff and defendant Chiat reside, is downhill from north to south. The Chiat lot, which is situated to the north of plaintiff's lot, was apparently higher than plaintiff's in its unimproved state; in any event it was not

of lower grade. Defendants, by filling and grading, altered the contour and raised the grade level of Chiat's lot from 10 to 12 inches above that of plaintiff's lot. Plaintiff, however, had originally raised the level of his own lot during the construction of his home. Defendant Chiat, moreover, had elevated his lot to that level in the not unfounded expectation that the level would thereafter sink, and both the level of his lot and the walks in that vicinity did in fact subside. The jury could find that defendants had not acted unreasonably in establishing the finished grade of Chiat's lot, considering both the past and present character of the land and the amount of property damage, if any, occurring as a result of the water drainage during the various periods subsequent to construction.[4] The concept of "reasonable use" is a flexible one, and presents a question of fact to be resolved according to the peculiar facts in each case. Enderson v. Kelehan, 226 Minn. 163, 168, 32 N. W. (2d) 286, 289. We cannot hold that the jury's findings are palpably contrary to the evidence, and accordingly affirm.

The trial court concluded, in the exercise of its sound discretion, that plaintiff was not entitled to an injunction directing defendant Chiat to take measures to avoid the flow of water onto plaintiff's lot. Defendant Chiat had, sometime subsequent to the construction of his home, constructed a swale and installed a drainpipe on his side of the common boundary to drain surface water from his land toward Drew Avenue which, as the trial court found, substantially prevented the flow of water onto plaintiff's lot except in periods of abnormal accumulation of moisture. Because we cannot hold that the court abused its discretion in denying the injunction, we affirm.

Reversed in part and affirmed in part. Costs and disbursements will not be allowed to either party.

---

[4] Any water that collected was apparently in the vicinity of plaintiff's detached garage at the rear of his lot. Although plaintiff claimed that water from rains and melting snow had on occasion leaked into the basement of his house at the front of the lot, the jury doubtless did not ignore plaintiff's admission that his basement water existed even before the construction of the Chiat house.