Mark A. MATTER, et al., Respondents,

v.

Gary NELSON, et al., Appellants.

No. C8–91–663.

Court of Appeals of Minnesota.

Dec. 3, 1991.

Arthur C. Benson, Harvey, Sheehan & Benson, Minneapolis, for respondents.

John F. Bonner III, Brian R. Martens, Bonner Law Offices, Minneapolis, for appellants.

Considered and decided by DAVIES, P.J., and PARKER and FOLEY,\* JJ.

## OPINION

DAVIES, Presiding Judge.

Appellants claim that respondents' nuisance action for water damage is barred by the statute of limitations and that the trial court erred in finding nuisance liability and awarding damages. Respondents challenge the trial court's denial of punitive damages. On these issues, we affirm. Appellants also claim the trial court abused its discretion in ordering installation of an underground pipe as a means of abatement. On this issue, we reverse.

## FACTS

Appellants Gary and Nadine Nelson own a mobile home park adjacent to property of respondents Mark and Caroline Matter in Watertown. The Nelsons purchased their mobile home park in 1980, at which time a storm water drainage system for 30 units discharged through a single culvert located 20 feet above lots 9 and 10. Prior to 1984, these lots were unimproved and the water simply drained down and across the vacant

---

\* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

land. Homes were built on the lower properties in 1984 and 1985. The Matters own lot 10 and the Skochenskis own lot 9.

The City of Watertown informed the Nelsons in 1984 and early 1985 that certain improvements to their storm water drainage system might be necessary to avoid damages to lots 9 and 10. The Nelsons took no immediate action following that notification. In May 1986, however, Mr. Skochenski lodged a complaint with the Nelsons and the city about continuing damage resulting from excess water drainage from the mobile home park. In response, the Nelsons constructed a swale on a 20–foot wide drainage easement they hold across lots 9 and 10. This involved some excavation, installation of a grate and gravel, and sodding.

No further problems were reported until March 1989, at which time an "ice dam" diverted water out of the swale and across the Matters' property, causing significant erosion. The Nelsons have not taken remedial action.

The Matters brought alternative claims for negligence, nuisance, and trespass against the Nelsons, and sought punitive damages. The court found in favor of the Matters on nuisance, awarding judgment in the amount of $8,555.55, denying punitive damages. Further, the Nelsons were ordered to abate the nuisance by extending the park's drainage system underground along the drainage easement and underneath an adjacent road.

Pursuant to the Nelsons' motion for amended findings or a new trial, the trial court issued amended findings, but denied the request for a new trial and denied the Matters' renewed request for punitive damages. The Nelsons now appeal the court's finding of nuisance, its award of damages, and its order for abatement in the form of an underground extension of the drainage system. Appellants also claim the Matters' action is barred by the statute of limitations. Respondents challenge the court's denial of punitive damages.

## ISSUES

1. Is respondents' nuisance cause of action barred by the two-year improvement-to-property statute of limitations?

2. Did the trial court err in finding appellants liable in nuisance?

3. Did the trial court abuse its discretion in ordering abatement of the nuisance through extension of the drainage system?

4. Did the trial court err in denying punitive damages?

## ANALYSIS

The scope of this court's review is limited to a determination of whether the trial court's findings are clearly erroneous, either without substantial support or based on an erroneous conclusion of law. *Warthan v. Midwest Consol. Ins. Agencies*, 450 N.W.2d 145, 147 (Minn.App.1990). This court does not defer to the trial court's ultimate conclusions of law. *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn.1977).

### I.

Minn.Stat. § 541.051, subd. 1 (1988), provides that any tort action for damage arising out of a defective and unsafe improvement to real property shall be brought no more than two years after discovery of the injury, and that such a cause of action shall accrue no more than ten years after substantial completion of the construction.

The property damage at issue resulted from surface water collected from the mobile home park. The construction of the swale in 1986 was an improvement to real property designed to address the problem of that water discharge. The swale is an additional component of the entire drainage system and is central to this suit. Thus, the construction of the swale starts the clock running, not the initial drainage system construction in 1973.

Respondents filed suit on October 26, 1989, within a year after injury to their property. The suit was also filed within ten years of the swale's construction.

Thus, respondents' cause of action is not barred by the statute of limitations.

## II.

Appellants contend the trial court erred in finding appellants liable on a nuisance theory. The court did not issue findings on the alternate theories of negligence and trespass. In its amended Order and Memorandum, the court made clear that negligence arguments were irrelevant to the court's conclusions. This court need only review whether the trial court's determination of nuisance was clearly erroneous or without support in the record.

Minnesota employs the doctrine of reasonable use when evaluating nuisance in the context of water drainage. *Highview N. Apartments v. County of Ramsey*, 323 N.W.2d 65, 71 (Minn.1982); *see Sheehan v. Flynn*, 59 Minn. 436, 441, 61 N.W. 462, 463 (1894). Reasonable use is a flexible doctrine, presenting a question of fact to be resolved according to the circumstances of each case. *Sachs v. Chiat*, 281 Minn. 540, 546, 162 N.W.2d 243, 247 (1968).

In *Highview*, the supreme court explained the interplay between nuisance law and the balancing test to be employed with the reasonable use doctrine. *Highview*, 323 N.W.2d at 70–71. In Minnesota, the nuisance cause of action is codified in Minn. Stat. § 561.01 (1988). The statute codifies an equitable cause of action which implicitly recognizes a need to balance the utility of appellants' actions against the harm to respondents. In the case of drainage, the balancing is between the necessary diversion of surface water and its effect on the property below. *See Highview*, 323 N.W.2d at 71. A nuisance action may prevail only if a party's actions with respect to drainage are found to be unreasonable. *See id.* at 72–73.

The reasonable use doctrine says that, if certain conditions are met, a landowner acting in good faith has the right to drain surface water and cast the water upon the burdened land of a neighbor.[1] *See Sheehan*, 59 Minn. at 442–43, 61 N.W. at 463.

These conditions include:

1) there is a reasonable necessity for the drainage;

2) care is taken to avoid unnecessary injury to the burdened land;

3) the utility or benefit accruing to the drained land outweighs the gravity of the harm resulting to the burdened land; and

4) the drainage is accomplished by reasonably improving and aiding the natural drainage system, or if, in the absence of a practical natural drain, a reasonable and feasible artificial drainage system is adopted.

*Highview*, 323 N.W.2d at 71. Furthermore,

"reasonable use" requires not only that the defendants' improvement be reasonably necessary and that the benefit exceeds the harm, but that the improvement avoid unnecessary harm to others. *Id.* at 72–73.

Although the trial court did not include an explicit "reasonable use" analysis or balancing in its order, consideration of reasonable use was implicit in the court's findings and conclusions. An implicit finding of unreasonable use was permitted by the supreme court in *Highview*. *Id.* at 72.

The trial court's order referred to three letters written by the City of Watertown to the Nelsons, putting them on notice that their current method of drainage would likely be insufficient. At trial, the court stated:

I believe [the letters] are relevant [because] it certainly indicates that the City was aware and Mr. Nelson was aware back in '84, '85 and '86 of the potential

---

1. In addition to the general right reasonably to drain their property, the Nelsons had secured an easement across the Matters' and Skochenskis' property. Under the common law of easements the Nelsons are responsible for any damage resulting from a failure to maintain or repair an easement, absent any separate agreement. 28 C.J.S. *Easements* § 94(c) (1941). Furthermore, the owner of a dominant estate is liable for damages resulting from a misuse of the easement. 28 C.J.S. *Easements* § 93 (1941).

problem with the run-off from this mobile home park.

Skochenski testified that drainage from the Nelsons' property caused him significant property damage in 1985 and early 1986. The Nelsons responded to this notice by constructing the swale rather than by pursuing the more substantial underground method suggested by the city. After constructing the swale, the Nelsons received a further complaint from Skochenski. He testified at trial:

> When they built the swale, the first rain after the swale was built, they didn't dig it deep enough at the top of [Matter's] property and we had since put black dirt and seeded our backyard. It rained and washed that out on the road. They came back again and dug it deeper at the top, but as the water comes down the swale, when it comes fast enough, either in the spring melt or heavy rain, it overflows the banks every time. We have got damage there now along the side of our driveway.

Further evidence included Matter's testimony that water was continuing to erode through the pathway carved after the ice dam diverted the water through his yard. Finally, the only expert to testify, Jed K. Reed, stated that over several years, a swale may erode to the point where it is ineffective to absorb or divert excess drainage.

Reasonable use is a flexible doctrine, presenting a question of fact to be resolved according to the circumstances of each case. *Sachs,* 162 N.W.2d at 246–47. It is not enough for the Nelsons to show simply that drainage from their property was beneficial. They failed to convince the trial court that the drainage system, constructed as it was, avoided unnecessary harm to the respondents. Based on the totality of facts before it, the trial court found a nuisance and corresponding damages. This reviewing court cannot conclude that the trial court's findings were clearly erroneous and without support in the record.

### III.

The extent of relief to be granted in nuisance cases lies largely within the discretion of the trial court. *Holmberg v. Bergin,* 285 Minn. 250, 258, 172 N.W.2d 739, 744 (1969). Here, however, there must be some evidence that using an adequate swale is an unreasonable way to drain the surface water before the court can mandate a more elaborate drainage system.

The only testimony on the general issue of using a swale versus underground piping was from Reed. He stated that in his opinion, reconstruction of the swale might not remedy the situation permanently:

> Q. [W]ouldn't you conclude that if the swale, if the back yard were filled in such that the swale was re-established, then perhaps it would in fact handle whatever ordinary water would flow from the pipe that drains the park?
>
> A. It's a possibility it would work but we have seen it where it has, where the far end * * * start[s] eating away. When water comes out of a culvert, there is a lot of pressure and especially coming off of up there, and when it hits the ground, it starts eating *and it can take years to keep eating and eroding.*

(Emphasis added.)

This speculative statement is not sufficient evidence that a swale, if of sufficient size, is an unreasonable method of drainage. It might be a simple matter to add gravel or reinforcing material at the vulnerable point of the swale and to increase its depth. To mandate underground piping on this testimony is an unreasonable burden and an abuse of discretion; there must be evidence showing the swale system to be inadequate.

Since the court found nuisance liability on the part of the Nelsons, they are obligated to abate the nuisance expeditiously. Until new experience shows otherwise, however, they may choose the manner of abatement. Their obligation to maintain reasonable use of their property remains, of course, and they will be responsible for future damage arising from an insufficient drainage system.

## IV.

Respondents challenge the trial court's denial of their request for punitive damages. Minn.Stat. § 549.20, subd. 1 (1990), provides:

Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.

The trial court concluded:

Plaintiffs have not met their burden of proof in showing by clear and convincing evidence that Defendants' actions constitute deliberate action done in disregard for the rights or safety of Plaintiffs. Therefore punitive damages are inappropriate in this matter.

Upon review of the record, this court finds nothing to support respondents' claims that the Nelsons showed willful indifference or deliberate disregard to the rights or safety of others. Therefore, there is no basis to find the trial court erred in denying punitive damages.

Respondents further argue that they were improperly denied a full opportunity to present evidence to the trial court on the punitive damages question. The type of evidence they sought to introduce went to the comparative financial positions of the parties.

Respondents attempted to cross-examine Mr. Nelson on the financial status of the mobile home park, at which point the court interjected:

You can get to that after you have gotten through the other part about his willful indifference. At this point, I haven't found any willful indifference; so, you better talk to him about that first.

Since the court was not persuaded that willful indifference was ever established, it disallowed further testimony on the comparative financial status of the parties.

Appellants mistakenly argue that the court should have considered the parties' financial status as *part* of the "deliberate disregard or willful indifference" evaluation. There is no case law to support this assertion, and there was no error in the trial court's determination that punitive damages were inappropriate in this situation.

## DECISION

Respondents' action is not barred by the statute of limitations. The court's finding of nuisance liability and damages was supported by evidence of appellants' unreasonable use of the property or misuse of the easement. With both nuisance liability and damages affirmed, appellants must abate expeditiously the nuisance in whatever appropriate manner they choose. In the absence of evidence that a swale is an unreasonable way to drain surface water, the court abused its discretion in ordering abatement in the form of a more elaborate drainage system. The court's denial of punitive damages was warranted in the absence of evidence of deliberate disregard for the rights or safety of others.

Affirmed in part and reversed in part.

FOLEY, Judge (concurring in part, dissenting in part).

I concur in that part of the majority opinion that holds respondents' action is not barred by the statute of limitations. I also concur in that part of the opinion that supports the trial court's denial of punitive damages. I further concur with the majority upholding the award of damages and finding a nuisance occurred to respondents' property.

I respectfully dissent insofar as the majority opinion reverses the trial court's order requiring abatement of the nuisance. Having found a nuisance occurred with damage to respondents' property, abatement of that nuisance is for the trial court.

This case deals with the law governing the drainage of surface waters from one property and its effect on others. The unreasonable drainage of surface waters from one property to another (as occurred here) clearly constitutes a nuisance to the other lands affected by the discharge. *See Pell v. Nelson*, 294 Minn. 363, 201 N.W.2d 136 (1972). The evidence fully supports the findings.

In 1986, the Skochenskis lodged a complaint with appellants about property damage resulting from excess water drainage from appellants' mobile home park. Appellants then constructed a drainage swale on the Skochenskis' property to absorb the excess water runoff. This involved some excavation, installation of a grate and gravel and planting of soil.

In March 1989, an "ice dam" formed one night causing the water to be diverted out of the swale and onto and across respondents' property. Respondents filmed the damage and informed the appellants' employee the next day. Appellants did nothing to correct or alleviate the damage to respondents' property.

Respondents offered expert testimony by Jed K. Reed, who stated that reconstruction of the swale would not necessarily remedy the situation, and a swale does not guarantee protection after several years. Appellants did not present any contradictory expert evidence but continued to rely on their own assertion that the swale worked well before the formation of the ice dam and reconstruction of the swale should be sufficient. The expert's testimony was consistent with the stated position of the City of Watertown.

Minnesota law is clear that the extent of relief to be granted in nuisance cases lies largely within the discretion of the trial court. *Robinson v. Westman,* 224 Minn. 105, 29 N.W.2d 1, 6–7 (1947); *see Pell,* 294 Minn. at 136, 201 N.W.2d at 363.

> Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, *and by the judgment the nuisance may be enjoined or abated, as well as damages recovered.*

Minn.Stat. § 561.01 (1990) (emphasis added).

Significant to decision on appeal are the trial court's findings, which include the following:

7. On not less than three additional occasions during 1985 the City of Watertown, through written correspondence, brought to [appellants'] attention the potential for damages to Lots 9 and 10, * * * as a result of the discharge of water from [appellants'] private storm sewer drainage system.

\*   \*   \*   \*   \*   \*

9. In or about May of 1986, after receiving complaints of property damage from the owner of Lot 9 * * * caused by water drainage from [appellants'] private storm sewer, [appellants] caused to be constructed a drainage swale upon and within the drainage easement located upon Lot 9 * * *.

10. In or about March of 1989 excessive water drainage flowing from [appellants'] private storm sewer began moving across [respondents'] Property.

11. [Respondents] gave [appellants] timely notice of the discharge of and damages from water flowing through [appellants'] private storm sewer onto [respondents'] Property.

12. [Appellants] failed and refused to take any actions to correct, alleviate or otherwise abate the continuing damage to [respondents'] property caused by water draining from [appellants'] private storm sewer.

13. As a result of the water flowing from [appellants'] private storm sewer drainage system, [respondents'] Property has been severely damaged by water erosion. Such erosion has caused dangerous conditions to result on [respondents'] Property.

14. Due to the damage to their property, [respondents] have suffered a loss of the use of a portion of their property over the last 23 months.

15. [Respondents'] Property will continue to suffer further and additional damage due to water erosion as a result of drainage from [appellants'] private storm sewer system until such time as

necessary improvements are made to said storm sewer system.

16. [Appellants'] failure to adequately maintain their private storm sewer drainage system and [appellants'] inadequate construction of a drainage swale over and across the drainage easement located upon Lot 9 * * * are the proximate cause of the damages to [respondents'] Property.

17. The cost of repair to [respondents'] Property, including costs previously incurred ($280.00), is $6,000.00.

18. The value of [respondents'] loss of use of the subject portion of their property over the preceding 23 months is reasonably valued at $2,555.55.

## CONCLUSIONS OF LAW

1. [Appellants'] actions and inactions in allowing substantial volumes of water and other matter to flow upon and across [respondents'] Property constitute an obstruction to [respondents'] free use of their property, interfering with the comfortable enjoyment of [respondents'] Property. As such, [appellants'] private storm sewer drainage system as presently maintained and utilized constitutes an actionable nuisance pursuant to Minn. Stat. § 561.01 which allows judgment for abatement of the nuisance and damages resulting from such nuisance.

Having determined that there is an actionable nuisance under evidence that supports the findings and conclusions, it was entirely within the trial court's statutory authority to order a storm sewer to abate further damage, and determine how the nuisance should be abated. This court should not substitute its own judgment for that of the trial court as to how the nuisance should be abated. *See Hueper v. Goodrich,* 263 N.W.2d 408, 411 (Minn. 1978); *Pell,* 294 Minn. at 366, 201 N.W.2d at 138-39. Fact issues are for the trial court. *Romanik v. Toro Co.,* 277 N.W.2d 515, 518 (Minn.1979).

I am not aware of any authority which permits a court (trial or appellate) to assign the exercise of its discretion to a party in interest, but that is what the majority opinion would do.

On the issue of abatement, I dissent.