*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2097**

Jovani Nassar, et al.,
Appellants,

vs.

Fady Chamoun, et al.,
Respondents.

**Filed September 22, 2014
Affirmed
Rodenberg, Judge**

Dakota County District Court
File No. 19HA-CV-10-499

Evan H. Weiner, John R. Neve, Webb, PLLC, Minneapolis, Minnesota (for appellants)

James A. Reding, Jr., Matthew P. Stewart, Reding & Pilney, PLLP, Lake Elmo, Minnesota (for respondents)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellants Jovani Nassar and Sonia Morales challenge the district court's dismissal of their claims after a jury verdict, arguing that the district court erred by (1) instructing the jury on comparative fault; (2) including a nonparty on the special verdict form; (3) excluding evidence of the parties' purchase agreements and

homeowners' association covenants; and (4) denying their alternative motions for judgment as a matter of law (JMOL) or a new trial.  We affirm.

## FACTS

In March 2008, respondents Fady and Sylvana Chamoun purchased a home in the City of Rosemount from U.S. Home Corporation d/b/a Lennar Homes, Inc. (Lennar). The purchase agreement contained a "master disclosure and information addendum." Paragraph 13.2 of this addendum describes the drainage and utility easements:

> There are drainage and utility easements along the perimeter of every homesite in the Community. . . . Nothing may be done in any drainage and utility easement area to impede the drainage of surface water or to interfere with the installation, maintenance and repair of utility lines and structures.  Play structures, landscaping, accessory structures (such as small sheds) or other improvements may not be installed in the drainage and utility easement areas, because they might change the drainage pattern and/or might have to be removed, at the homeowner's expense, in order to maintain underground utility lines.

In August 2008, appellants purchased the home immediately adjacent to respondents' home and entered into a similar purchase agreement with Lennar, containing the same addendum.

Respondents closed on the purchase of their home in September 2008.  Before closing, and before ground was broken for construction of appellants' home, Lennar approved respondents' landscaping plan, and respondents installed landscaping.  The parties dispute whether part of respondents' landscaping falls within the drainage easement and whether respondents added fill to the easement.

2

Appellants' expert testified that, before appellants' closing in March 2009, the grade of appellants' property was lowered approximately five feet.[1] Both Lennar and the City of Rosemount approved the property's final grade. But when appellants attempted to landscape their property in July 2009, they discovered a grading issue that they claim caused water to flow from respondents' property to theirs. Appellants concluded that both properties needed to be regraded to create a drainage swale between them. In response to these concerns, appellants, respondents, Lennar, and the City of Rosemount negotiated, and Lennar performed, a regrading of the drainage easement on both properties without removing respondents' landscaping.[2]

Appellants were not satisfied after the regrading. They sued respondents, alleging negligence, nuisance, trespass, and third-party-beneficiary breach-of-contract claims. The district court granted respondents' motion for summary judgment. On appeal, we reversed the district court's grant of summary judgment in part and remanded for further proceedings. *Nassar v. Chamoun*, No. A11-793, 2012 WL 426595, at *1 (Minn. App. Feb. 13, 2012). We explained that "[t]he drainage of surface water onto neighboring land is governed by the reasonable-use doctrine, which balances the benefits of drainage with the harm to the neighboring landowner." *Id.* at *3. Concerning appellants' breach-of-

---

[1] Appellants' home is a "walkout," with the lower level being at ground level in the back of the house. It appears from the record that the regrading may have been done to accommodate the walkout configuration.

[2] Appellants appear to argue that, even after the regrading, there was no drainage swale between the two properties. Respondents appear to argue that there was *always* a drainage swale and that the water drainage was proper at all times. The parties' competing arguments, photographs of the properties, and the opinions of multiple expert witnesses were considered by the jury.

contract claim, we concluded that "appellants were not intended beneficiaries and are precluded from enforcing the agreement as third party beneficiaries." *Id.* at *2. We also held that appellants were precluded from basing their other claims on any contractual obligations arising from the purchase agreements, but that appellants could bring other claims based on the reasonable-use doctrine. *Id.* at *4-5. Because appellants alleged negligence and nuisance based on the reasonable-use doctrine, we reversed the district court's grant of summary judgment on those two claims. *Id.* at *4. But because appellants alleged trespass based solely on the purchase agreement, we affirmed the grant of summary judgment on that claim. *Id.* at *5.

On remand, appellants moved to amend their complaint to add additional parties, including the homeowners' association, the City of Rosemount, and the company that landscaped respondents' property. The district court denied the motion.[3] Appellants were permitted to amend their complaint to include a trespass claim against respondents based on the reasonable-use doctrine. The case was tried to a jury over seven days.

Appellants' expert witnesses opined that removal of respondents' landscaping and regrading of the drainage swale were necessary to fix an extensive drainage problem that violated city code. Respondents' expert recommended that appellants install a retaining wall on their property to fix a "pretty localized" drainage issue. There was also testimony

---

[3] Appellants had a separate arbitration with Lennar to resolve their claim regarding the grading of the property. The arbitrator ordered Lennar to pay for and repair the drainage swale once appellants received city approval of their repair plan. We affirmed the arbitrator's award on appeal. *Nassar v. U.S. Home Corp.*, No. A13-1137, 2014 WL 621700, at *1 (Minn. App. 2014), *review denied* (Minn. Apr. 29, 2014).

4

that some of the damage to appellants' home and property was caused by a lack of gutters, deficient window flashing, and a lack of sod and landscaping to prevent erosion.

The jury returned a lengthy special verdict, concluding that (1) neither respondents nor appellants created a nuisance affecting appellants' property; (2) Lennar created a nuisance affecting appellants' property; (3) neither Lennar nor respondents were negligent; (4) appellants were negligent and their negligence was a direct cause of their claimed damages; (5) neither respondents nor Lennar trespassed on appellants' property; and (6) appellants had proven no damages. The district court entered judgment for respondents based on the jury's verdict.

Appellants moved for a new trial, JMOL, and amended findings. The district court denied these motions. This appeal followed.

**D E C I S I O N**

**I.**

Appellants first challenge the jury instructions. "The district court has broad discretion in determining jury instructions and we will not reverse in the absence of abuse of discretion." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002). If a jury instruction was both erroneous and prejudicial to appellants, then appellants are entitled to a new trial. *See Youngquist v. W. Nat'l Mut. Ins. Co.*, 716 N.W.2d 383, 386 (Minn. App. 2006). "A new trial is also required if the instruction was erroneous and its effect cannot be determined." *Morlock v. St. Paul Guardian Ins. Co.*, 650 N.W.2d 154, 159 (Minn. 2002).

A district court "errs if it gives a jury instruction that materially misstates the law." *Youngquist*, 716 N.W.2d at 385-86. "An instruction that is so misleading that it renders incorrect the instruction as a whole will be reversible error . . . . Where instructions overall fairly and correctly state the applicable law, appellant[s are] not entitled to a new trial." *Hilligoss*, 649 N.W.2d at 147.

Appellants chose to assert three claims against respondents for (1) negligence, (2) nuisance, and (3) trespass. Because these claims arose from the drainage of surface water onto neighboring land, the reasonable-use doctrine applies. *See Highview N. Apts. v. Cnty of Ramsey*, 323 N.W.2d 65, 71 (Minn. 1982). The reasonable-use doctrine balances the benefits "to the land drained" with the harms to the neighboring property "receiving the burden." *Enderson v. Kelehan*, 226 Minn. 163, 168, 32 N.W.2d 286, 289 (1948). "This is a flexible doctrine, presenting a question of fact to be resolved according to the circumstances of each case." *Highview N. Apts.*, 323 N.W.2d at 71. "No one factor or circumstance is controlling." *Enderson*, 226 Minn. at 168-69, 32 N.W.2d at 289.

Appellants argue on appeal that the district court erred in instructing the jury "on principles of ordinary negligence." But appellants brought a negligence claim against respondents, and they proposed jury instructions that included the definitions of negligence and its reasonable-care standard. *See* 4 *Minnesota Practice*, CIVJIG 25.10 (2006) (explaining that "[n]egligence is the failure to use reasonable care" and that "[r]easonable care is the care a reasonable person would use in the same or similar circumstances"). The district court agreed with appellants and gave the instructions

6

appellants proposed regarding negligence and reasonable care. The district court did not err in instructing the jury on principles of ordinary negligence, and the instructions given were appropriate based on the claims advanced by appellants.

Appellants next suggest that the jury may have confused the reasonable-care and reasonable-use instructions. Appellants themselves proposed instructing the jury regarding both doctrines. They cannot now argue that the district court confused the jury by instructing it as appellants themselves proposed. *See Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 628 (Minn. 2012) (explaining that a party cannot try a case on one theory without objecting to the jury instructions "while holding a second theory in reserve for a possible appeal"). And, more importantly, there is nothing in the record to suggest that the jury was confused by either instruction. *See State v. Weaver*, 386 N.W.2d 413, 418 (Minn. App. 1986) ("When reviewing jury instructions, a reviewing court must assume that the jurors were intelligent and practical people." (quotation omitted)), *review denied* (Minn. June 19, 1986). The jury concluded that respondents had neither unreasonably used their property nor failed to exercise reasonable care. The verdict reflects no confusion.

Appellants also challenge the jury instruction regarding comparative fault, arguing that comparative fault does not apply in a reasonable-use case. For all three claims, the district court instructed the jury to compare the relative fault of (1) appellants and respondents and (2) appellants, respondents, and Lennar. *See* 4 *Minnesota Practice*, CIVJIG 28.15 (2006). Appellants have cited no Minnesota caselaw suggesting that the comparative-fault instruction the district court gave materially misstated the law. *See*

7

*Youngquist*, 716 N.W.2d at 385-86 (explaining that a district court errs when its jury instructions "materially misstate[] the law"). The district court exercised its broad discretion to craft thoughtful jury instructions that would cover all of the areas addressed by the special verdict form. *See Hilligoss*, 649 N.W.2d at 147 ("The district court has broad discretion in determining jury instructions and we will not reverse in the absence of abuse of discretion.").

Appellants argue that we should follow the reasoning of a California case, *W. Salt Co. v. City of Newport Beach*, wherein the court held that a contributory-fault instruction was improper in a case involving surface-water damage. 271 Cal. App. 2d 397, 402 (Cal. Ct. App. 1969). But California does not apply Minnesota's reasonable-use doctrine. *See Highview N. Apts.*, 323 N.W.2d at 71 (stating that Minnesota's reasonable-use doctrine is a "flexible doctrine"); *W. Salt. Co.*, 271 Cal. App. 2d at 403 (stating California's doctrine). Because *W. Salt. Co.* is from a foreign jurisdiction, it is not binding. *Midland Credit Mgmt. v. Chatman*, 796 N.W.2d 534, 536 n.3 (Minn. App. 2011) ("Only the decisions of the Minnesota Supreme Court and the U.S. Supreme Court are binding on this court."). Because it applies a very different substantive law, it is also unpersuasive.

Moreover, even if the district court's comparative-fault instruction was somehow erroneous, appellants cannot establish that it was prejudicial. *See Youngquist*, 716 N.W.2d at 386 (explaining that a new trial is warranted only when both error and prejudice are established). "An error is prejudicial if there is a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted).

The jury determined that respondents did not create a nuisance, were not negligent, and did not trespass on appellants' property. Appellants were the only ones found by the jury to be *both* at fault *and* the cause of appellants' damages. Therefore, the jury never reached or answered the comparative-fault questions on the special verdict form. Because the jury never reached the comparative-fault questions, the comparative-fault instruction could not have had any significant effect on the jury's verdict. The district court did not abuse its discretion in instructing the jury.

## II.

Appellants next challenge the district court's decision to include Lennar on the special verdict form. "District courts have broad discretion to decide whether to use special verdicts and what form special verdicts are to take." *Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 845 N.W.2d 168, 171 (Minn. 2014). Appellants are entitled to a new trial only when the special verdict form was both erroneous and prejudicial. *See RAM Mut. Ins. Co. v. Meyer*, 768 N.W.2d 399, 406-07 (Minn. App. 2009) (applying the abuse-of-discretion standard to a special-verdict question), *review denied* (Minn. Oct. 20, 2009).

"When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each . . . ." Minn. Stat. § 604.02, subd. 1 (2012). "Persons" in this context means "parties to the transaction," not "parties to the lawsuit." *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 75 (Minn. 2012). "If there is evidence of conduct which, if believed by the jury, would constitute negligence (or fault) . . . , the fault or negligence of that party should be submitted to the jury." *Lines v. Ryan*, 272 N.W.2d 896, 902 (Minn. 1978) (quotation omitted). This is true even when

9

a party has been dismissed from the lawsuit or has been released. *Id.* at 902-03. The jury's apportionment on a special verdict form should include everyone who "may have contributed to the arising of the cause of action." *Id.* at 903.

Appellants argue that, under *Matter v. Nelson*, 478 N.W.2d 211 (Minn. App. 1991), a property owner "has a continuing duty to take reasonable measure[s] to protect the owners of adjoining property from harm due to . . . water drainage" regardless of who created the drainage problem and that therefore Lennar should not have been included on the special verdict form. But the facts in *Matter* are very different from the facts here. In *Matter*, the appellants owned a mobile home park for nine years, during which time they constructed a drainage swale to correct a water-drainage problem. 478 N.W.2d at 212-13. "[A]n 'ice dam' diverted water out of the swale" and damaged the respondents' property, but the appellants took no further remedial action. *Id.* at 213. The appellants were found to have created a nuisance. *Id.* Unlike the appellants in *Matter*, respondents here neither created the drainage swale nor established the final grading of the properties. And respondents did not refuse to take remedial action; they agreed to and cooperated with the regrading Lennar performed. *Matter* supports the proposition that property owners are responsible for water-drainage problems that they create and fail to correct. It does not address whether the fault of a previous property owner and creator of a drainage problem is to be included on a special verdict form in a case such as this.

Here, the district court crafted a thorough special verdict form, including alternative questions concerning the allocation of fault, stating that it did so in order to

10

"make an intelligent decision" regarding judgment upon the verdict. The district court did not abuse its discretion in including Lennar on the special verdict form.

And, as with the issues concerning jury instructions, appellants again cannot establish prejudice. The district court instructed the jury that it would decide "some of the questions on the verdict form" as if Lennar was a party to the lawsuit. It also instructed the jury that it "must not be concerned that a particular answer on the verdict form is favorable to one party or the other." *See* 4 *Minnesota Practice*, CIVJIG 10.20 (2006). In answer to questions 1, 11, and 17, the jury found that respondents did not create a nuisance, were not negligent, and did not trespass on appellants' property. Nothing in the record suggests that the jury was somehow confused or misled by the presence of questions 8, 15, and 19, asking whether Lennar created a nuisance, was negligent, or trespassed on appellants' property. We assume that the jury followed the district court's instructions and answered the special-verdict questions as posed to them and consistent with the instructions given them. *See Weaver*, 386 N.W.2d at 418 ("When reviewing jury instructions, a reviewing court must assume that the jurors were intelligent and practical people." (quotation omitted)).

Finally, when instructing the jury regarding the final special-verdict question concerning what amount of money would compensate appellants for their damages, the district court properly instructed the jury that it "must answer this question regardless of [its] answers to the other questions on the verdict form" and must "not question the possible effects of [its] answers to other questions." *See* 4A *Minnesota Practice*, CIVJIG 90.10 (2006). The jury concluded that appellants had proven no damages (answering "0" to

11

the question of what amount of money would fairly and adequately compensate appellants for their damages). We again assume that the jurors followed the district court's instruction to answer this question regardless of the other special-verdict questions. Because the jury determined that respondents were not at fault under any of appellants' theories of liability and that appellants were entitled to no damages, there is no reasonable likelihood that including Lennar on the special verdict form had a significant effect on the jury's verdict.

**III.**

Appellants challenge the district court's decision to exclude evidence of the parties' purchase agreements and homeowners' association covenants. The district court excluded this evidence because, as explained by our earlier opinion, appellants cannot use the documents to support claims for breach of contract. The district court concluded that the documents were irrelevant to appellants' claims for negligence, nuisance, and trespass. In addition, the district court intended to present the jury only with "tort claims and not contractual claims" and determined that the documents might confuse the jury.

"The admission of evidence rests within the broad discretion of the [district] court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45-46 (Minn. 1997) (quotation omitted). Even if the district court's evidentiary ruling was erroneous, we will grant a new trial only if the complaining party can demonstrate prejudicial error. *Id.* at 46.

Appellants rely on two cases in arguing that the district court erred in excluding the documents: *Foster v. Herbison Constr. Co.*, 263 Minn. 63, 115 N.W.2d 915 (1962)

12

and *Dornack v. Barton Constr. Co.*, 272 Minn. 307, 137 N.W.2d 536 (1965). In both cases, the supreme court determined that a contract between a construction company and the State of Minnesota should have been admitted into evidence for the jury's consideration of a construction company's duty to an injured driver. *Foster*, 263 Minn. at 63-64, 70, 115 N.W.2d at 915-16, 919; *Dornack*, 272 Minn. at 311-312, 317-18, 137 N.W.2d at 540, 543-44. But those cases involve construction accidents and construction contracts with language benefiting the general public. They do not require the admission of the parties' purchase agreements and homeowners' association covenants. Here, each purchase agreement benefits only the parties to the contract.

Appellants' claims of negligence, nuisance, and trespass are not based on the purchase agreements or the homeowners' association covenants. The documents are therefore irrelevant to proving those claims. *See* Minn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Other evidence regarding the actions and duties of the parties was properly introduced at trial. The district court acted within its discretion in excluding evidence of the parties' purchase agreements and homeowners' association covenants.

**IV.**

Finally, appellants argue that the jury's findings that Lennar created a nuisance and that appellants were entitled to no damages are "hopelessly contradictory." "An answer to a special verdict question should be set aside only if it is perverse and palpably

13

contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 888 (Minn. 2010) (quotation omitted). "The test is whether the special verdict answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) (quotations and citation omitted).[4]

Appellants rely on a North Carolina case, *Pendergrast v. Aiken*, 236 S.E.2d 787 (N.C. 1977), to argue that they are entitled to a new trial. But *Pendergrast* involves vastly different facts from those here and applies a different nuisance law that requires the finding of a substantial injury. 236 S.E.2d at 788-90, 799. The jury here did not have to find that appellants had proved recoverable damages to the property to find that Lennar created a nuisance. *Pendergrast* is of no help to us in applying Minnesota law to the facts of this case because it is neither binding, *see Midland Credit Mgmt.*, 796 N.W.2d at 536 n.3 ("Only the decisions of the Minnesota Supreme Court and the U.S. Supreme Court are binding on this court."), nor persuasive.

The jury, having been properly instructed as discussed above, concluded that Lennar created a nuisance that affected appellants' property. The district court instructed the jury that it must answer the damages question "regardless of [its] answers to the other

---

[4] The parties dispute the standard of review applicable to the review of a district court's determination of whether a jury's verdict is inconsistent. Because we conclude that the jury's verdict is not internally inconsistent under any analysis, we need not resolve the parties' dispute concerning the precise formulation of the standard of review.

questions on the verdict form" and that "[a] party asking for damages must prove the nature, extent, duration, and consequences of his or her harm." *See* CIVJIG 90.10; 4A *Minnesota Practice*, CIVJIG 90.15 (2006). The jury concluded that appellants had failed to meet their burden to prove damages. These special-verdict answers are not contradictory. They reflect adherence to the district court's instructions concerning the independence of the damages question from the other questions on the verdict form.

The jury also concluded that Lennar did not "negligently interfere with the comfortable use or enjoyment of [appellants'] life or property." This conclusion is entirely consistent with its finding that appellants had proven no damages. Because the jury's answers are easily reconciled, appellants are not entitled to a new trial, and the district court did not err in denying appellants' motions for JMOL or a new trial.

In sum, the district court acted within its discretion in instructing the jury, in including Lennar on the special verdict form, and in its evidentiary rulings, and the jury's verdict reflects no inconsistency or confusion. After a lengthy trial involving conflicting evidence, the jury found that respondents were not at fault and that appellants had not proven any damages.

**Affirmed.**