*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0322**

Carol Quinn, et al.,
Appellants,

vs.

William G. Johnson, et al.,
Respondents.

**Filed August 24, 2015
Reversed
Kirk, Judge**

Beltrami County District Court
File No. 04-CV-14-941

Jeremy A. Klinger, Drahos Kieson & Christopher, P.A., Bemidji, Minnesota (for appellants)

Kevin F. Gray, Christopher A. Wills, Rajkowski Hansmeier Ltd., St. Cloud, Minnesota (for respondents)

Considered and decided by Kirk, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellants challenge the district court's summary judgment dismissal of its continuing trespass claim arguing that the court erred by determining that their claim is

barred by the two-year statute-of-limitations provision in Minn. Stat. § 541.051, subd. 1(a) (2014). Respondents' house, mound system, and driveway incidentally diverted the flow of surface water onto appellants' property. Because the record does not contain evidence that the construction on respondents' property was an improvement to real property intended to address any problem of water discharge, the two-year statute-of-limitations provision does not apply to appellants' claim. We reverse.

## FACTS

Appellants-landowners Carol and Timothy Quinn own two lakeshore lots (lots 18 and 19) on Gull Lake in Beltrami County, which Carol Quinn acquired in 1997. Lot 17 is a lakeshore lot on Gull Lake that shares a northern boundary with lot 18. Quarter Horse Circle is an access road located on the western boundary of the lots. In 1997, lot 17 was vacant and undeveloped, and lots 18 and 19 had numerous healthy and mature trees. A natural berm separated lot 17 from lot 18. In her deposition, Carol Quinn testified that, in 1997, surface waters from Quarter Horse Circle would naturally enter a drainage ditch on the southwest corner of lot 18, flow onto lot 17, and then drain into Gull Lake.

In 2010, respondents William G. Johnson and Karen M. Johnson purchased lot 17 and began constructing a house, mound system, and driveway on the property. In an affidavit, William Johnson stated that construction of the house was substantially complete in March 2011. The backfill of the house's basement allegedly caused surface waters from Quarter Horse Circle to be diverted over to the Quinn property.

The Quinns allege that, since 2010, the diversion of surface water, which occurs whenever it rains or snow melts, has caused extensive erosion of their property's

2

shoreline and killed mature trees on the property. In a letter dated August 30, 2011, the Quinns informed the Johnsons that their house and mound system "block the natural drainage of the right of way. You cannot and must not redirect water onto our property." The Johnsons took no action in response to the Quinns' letter.

On October 18, 2013, the Quinns served the Johnsons with a complaint alleging trespass and negligence due to unreasonable diversion of surface waters and seeking damages in excess of $50,000.

On September 29, 2014, the Johnsons moved for summary judgment, arguing that the Quinns' claims were barred by the two-year statute-of-limitations provision in Minn. Stat. § 541.051, subd. 1(a) (2014). The Quinns opposed the motion, arguing that Minn. Stat. § 541.05, subd. 1(a), did not apply because they did not allege that the Johnson house was defectively designed. To the contrary, the Quinns argued that the Johnson house, mound system, and driveway "caused damage to their property by diverting surface water simply by being there and that there are not any other causes of water damage." Along with their motion, the Quinns submitted a report by Karvakko Engineering detailing the significant damage to their shoreline, wetlands, and mature trees caused by the diversion of surface waters onto their property. To mitigate the extensive damage to the Quinn property, Karvakko Engineering recommended the construction of a diversion swale at a cost of $125,000.

Following a hearing, the district court granted the Johnsons' motion for summary judgment. The district court explained that, in 2010, the Quinns noticed that surface waters were being redirected onto their property due to the construction of the Johnson

3

house and informed the Johnsons that this was causing damage to their property. Relying on *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 497 (Minn. App. 2003), the district court concluded that Minn. Stat. § 541.051, subd. 1(a), required the Quinns to commence their action for injury to real property arising out of the defective and unsafe condition of an improvement to real property within two years after discovering the injury. Because the Quinns did not, the district court concluded that their claim is barred by the two-year statute of limitations.

The Quinns appeal.

## D E C I S I O N

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court reviews whether there are any genuine issues of material fact and if the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). We view the evidence in the light most favorable to the party against whom summary judgment was granted and review de novo whether a genuine issue of material fact exists. *Id.* at 76-77. We also review de novo whether the district court erred in its application of the law. *Id.* at 77.

The Quinns argue on appeal that the district court erred in concluding that their trespass claim was barred under Minn. Stat. § 541.051, subd. 1. Instead, the Quinns contend that the six-year statute of limitations applies to their trespass claim because the

4

Johnson house created conditions leading to the unreasonable diversion of surface waters. *See* Minn. Stat. § 541.05, subd. 1(3) (2014) (stating that an action for trespass upon real estate must be commenced within six years). A defendant seeking to apply the two-year statute of limitations, which is an affirmative defense, "bears the burden of establishing that the claims are time-barred as a matter of law." *Nolan*, 673 N.W.2d at 495 (citing *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988)).

"Construction and applicability of a statute of limitations is a question of law," which we review de novo. *Nolan*, 673 N.W.2d at 495. We construe Minn. Stat. § 541.051 narrowly, but still give effect to the plain language of the statute. *Id.* Viewing the evidence in the light most favorable to the Quinns, we conclude that the district court erred in determining that the two-year statute-of-limitations provision in Minn. Stat. § 541.051, subd. 1, bars their trespass claim. The factual scenario presented in this case is more closely aligned to a trespass claim alleging unreasonable diversion of surface waters. Minn. Stat. § 541.051, subd. 1, provides in relevant part:

> (a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury, nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the

5

owner's representative can occupy or use the improvement for the intended purpose.

. . . .

(c) For purposes of paragraph (a), a cause of action accrues upon discovery of the injury. . . .

(d) Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

Minn. Stat. § 541.051, subd. 1(a), (c), (d).

"The question of whether injury to property arises out of a defective or unsafe condition is one that turns on the individual facts alleged in the complaint." *Nolan*, 673 N.W.2d at 495. Here, the Quinns are not alleging a trespass claim arising from a defective condition of an improvement to real property. Rather, the Quinns' complaint alleges an unlawful trespass onto their property because the Johnson house acts like a dam, pushing the surface waters onto their property and diverting from its natural course, which is to flow east from the road through the Johnson property and into Gull Lake.

The Johnsons principally rely on two cases to establish the applicability of the two-year statute of limitations in the instant case: *Nolan*, 673 N.W.2d at 491, which involved the alleged negligent design of a sewer system that caused frequent, regular, and permanent flooding of appellant's property, and *Minch Family LLLP v. Estate of Norby*, 652 F.3d 851 (8th Cir. 2011), which involved the construction of a field dike on neighboring land that caused flooding of appellant's property. Both *Nolan* and *Minch* involved improvements to real property intended to redirect or mitigate the intrusion of

6

waters onto property. *Nolan* involved a storm sewer system constructed by the Minnesota Department of Transportation, which was obviously intended to deal with rain water discharge. 673 N.W.2d at 491. *Minch* involved the construction of a field dike that was "intended to avoid excess water flow to [the respondent's] property." 652 F.3d at 856; *see also Matter v. Nelson*, 478 N.W.2d 211, 213-14 (Minn. App. 1991) (concluding respondents' tort action concerning a swale designed to address the problem of water discharge was timely under Minn. Stat. § 541.051).

But here, the construction of the Johnson house was not an improvement to real property intended to change the natural flow of surface waters as in *Minch* and *Nolan*. Rather, the construction on the Johnson property resulted in the unintentional, *incidental* change in the flow of surface water. We conclude that Minn. Stat. § 541.051, subd. 1, is not designed to address the issue raised in the instant case. A respondent could raise the limitations period as a shield against any water-diversion claim involving an improvement to real property—barring the use of a portable pump—because field dikes, berms, and ditches are *all* considered to be improvements to real property. *See* Minn. Stat. § 541.051, subd. 1(a). Moreover, public policy would seemingly discourage neighboring property owners from immediately suing in this type of situation. *See VoiceStream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 271 (Minn. 2008). For example, one year after construction, a heavy storm could cause some change in surface water flow onto a neighboring property, but an ensuing two-year dry cycle could lull the neighboring property owner into believing there was no chronic water discharge problem. This would cause the property owner to inadvertently delay filing a claim

beyond the two-year statutory limit. If a future wet cycle then caused further runoff, a property owner's action should not be time-barred because he waited to see if the water discharge would become a meaningful problem.

The Quinns' claim of continuing trespass arising from the unreasonable diversion of surface waters is more appropriately addressed under the reasonable-use test. *See Pell v. Nelson*, 294 Minn. 363, 366-67, 201 N.W.2d 136, 138-39 (1972) (holding that reasonable-use test applied to trespass actions involving the direct intrusion of surface waters on plaintiff's land). "'Surface waters' consist of waters from rain, springs, or melting snow which lie or flow on the surface of the earth, but which do not form part of a well-defined body of water or natural watercourse." *Enderson v. Kelehan*, 226 Minn. 163, 167, 32 N.W.2d 286, 289-90 (1948). Here, the Johnson house, mound system, and driveway act as a dam diverting surface waters into flows or pools on the Quinn property and away from its natural course through the Johnson property and into Gull Lake.

Under the reasonable-use doctrine, "if certain conditions are met, a landowner acting in good faith has the right to drain surface water and cast the water upon the burdened land of a neighbor." *Matter*, 478 N.W.2d at 214. The conditions include

> 1) there is a reasonable necessity for the drainage; 2) care is taken to avoid unnecessary injury to the burdened land; 3) the utility or benefit accruing to the drained land outweighs the gravity of the harm resulting to the burdened land; and 4) the drainage is accomplished by reasonably improving and aiding the natural drainage system, or if, in the absence of a practical natural drain, a reasonable and feasible artificial drainage system is adopted.

8

*Id.* "The concept of 'reasonable use' is a flexible one and presents a question of fact to be resolved according to the peculiar facts in each case." *Sachs v. Chiat*, 281 Minn. 540, 546, 162 N.W.2d 243, 247 (1968). These conditions are relevant when determining whether an obstruction that is caused by a landowner on his land inhibiting the drainage of surface water from a neighbor's land constitutes a reasonable use. *Quist v. Kroening*, 410 N.W.2d 5, 6 (Minn. App. 1987).

Viewing the record in the light most favorable to the Quinns, they alerted the Johnsons no later than August 2011 of the drainage problems. In October 2013, the Quinns initiated an action alleging a continuing trespass from unreasonable diversion of surface waters. Thus, the Quinns' trespass cause of action is timely under the six-year statute of limitations. *See* Minn. Stat. § 541.05, subd. 1(3).

**Reversed.**